## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE   DIVISION

Culotta                                    Civil Action No. 17-00093

versus                                     Unassigned District Judge

Lafayette Consolidated                     Magistrate Judge Carol B. Whitehurst
Government, et al

## REPORT AND RECOMMENDATION

Currently pending before the undersigned, on referral by the district judge, are two unopposed[1] Motion[s] to Dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6) filed by Defendants, Lafayette Parish Sheriff's Department ("LPSD"), "through its Sheriff, Mark A. Garber" ("Sheriff Garber"), and LPSD officers yet to be named ("LPSD Officers"), in their individual and official capacities (sometimes collectively referred to as "LPSD Defendants"), [Rec. Doc. 25] and Defendants, Lafayette City-Parish Consolidated Government ("LCG") and LCG officers yet to be named ("LCG Officers"), in their individual and official capacities (sometimes collectively referred to as "LCG Defendants") [Rec. Doc. 27].[2] For the reasons explained below, it is recommended that the Motions to Dismiss be granted in part

---

[1] Pursuant to Local Rule 7.4, Plaintiff's oppositions to the motions were due on August 31, 2017, and September 2, 2017.

[2] The LCG Defendants adopt and incorporate by reference the Motion to Dismiss filed by the LPSD Defendants  to the extent applicable to the LCG Defendants.

and denied in part.

*Procedural Background*

Plaintiff, Thomas Joseph Culotta, filed this action on January 20, 2017, asserting claims under 42 U.S.C. § 1983 for violations of, *inter alia*, the Fourth Amendment (based on his allegedly unlawful arrest and detention) and the Fourteenth Amendment (based on his conditions of confinement while detained). Plaintiff also asserts claims under Louisiana state law. Plaintiff lists as defendants, Sheriff Garber and unknown LPSD Officers, LCG and unknown LCG officers.

Prior to filing the instant Motions to Dismiss the Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6), *R. 25, 27,* the LPSD and LCG Defendants filed virtually identical motions to dismiss. *R. 5, 6.* Plaintiff filed a memorandum in opposition to those motions to dismiss and attached an affidavit alleging additional facts. *R. 15.* Because the affidavit provided detailed allegations related to the claims in his Complaint, the Court construed it as a motion to amend and gave Plaintiff the opportunity to amend his Complaint. The Court also denied those motions to dismiss without prejudice to the right of the parties to re-urge their motions if appropriate. *R. 23*.

On June 26, 2017, Plaintiff filed an Amended and Restated Complaint. *R. 24*. Allegations were added to Paragraph 15, 16, and 21 with respect to the LCG

Defendants. There were no additional allegations asserted against the LPSD Defendants and the Plaintiff failed to include the additional statements made in the affidavit attached to his memorandum in opposition. *R. 15-1*. Thereafter, Defendants filed the instant Motions to Dismiss on the same grounds asserted in their original Motions to Dismiss. [Rec. Docs. 25, 27]. Plaintiff has not filed any opposition to the Motions.

*I. Factual Background*

According to the Amended Complaint, *R. 24*, on January 21, 2016, Plaintiff, Thomas Joseph Culotta, the owner and operator of Culotta's Lawn Care and Landscaping Company, was wearing his lawn-care work shirt at a Home Depot in Lafayette, Louisiana. A man, who said his name was Jordan Dugas, and his wife approached Plaintiff and asked if Culotta's Lawn Care and Landscaping Company was hiring because Dugas and his wife were looking for work and trying to sell a work truck they owned. Plaintiff alleges that he was interested in hiring Dugas and in buying the truck. Mr. and Mrs. Dugas then followed Plaintiff to his home and, while there, they loaded materials into Mr. Dugas' truck. The three of them then went for a test drive of the truck. As they approached Home Depot, Mr. Dugas asked Plaintiff to "pull over on a street near the parking lot." After complying with Dugas' request, both Mr. and Mrs. Dugas, "took off running from the vehicle through the

nearby woods." Plaintiff alleges that he now believes Mr. Dugas spotted a police officer and exited the vehicle because he had stolen a firearm from Plaintiff's tool bin, and it was in Mr. Dugas' possession.

Plaintiff alleges he was stunned by the Dugas' actions and decided to get out of the truck. When he opened the door to exit the vehicle, he was immediately tackled by several police officers employed by LCG. Plaintiff alleges that the LCG Officers did not have an arrest or search warrant, and lacked probable cause for arresting him. Plaintiff also alleges the force used by the LCG Officers was unreasonably excessive, violative of his civil rights and noncompliant with ordinary police department procedures implemented by the LCG.

After being arrested by the LCG Officers, Plaintiff was transferred to the Lafayette Parish Correctional Center ("LPCC"). Plaintiff contends the LPCC is run by and the responsibility of LPSD. While at the LPCC, Plaintiff alleges he was left unattended for a substantial period of time by LPSD Officers. He also alleges that he was provided no physical accommodations for his medical condition of scoliosis, herniated discs and degeneration conditions of his spine, which were alleged to have been communicated to LPSD Officers. He further contends that he was told he would be provided a cot on a bottom bunk and was not. Additionally, Plaintiff contends that he was "placed in extreme levels of fear from other inmates." Finally, Plaintiff alleges

he was placed in the laundry room "for a period of time" during which time he was not provided access to a bathroom, resulting in him having to defecate and urinate on the laundry room floor. Plaintiff alleges that after his release from the LPCC, the District Attorney declined to prosecute Plaintiff on the charges relating to the incident on January 21, 2016.

While somewhat difficult to determine, the Court interprets Plaintiff's causes of action in his Amended Complaint as follows:

1. LCG and LCG Officers under § 1983: (1) excessive force; (2) unreasonable seizure and detention; (3) unreasonable and unlawful arrest, in violation of the Fourth Amendment. *R. 23*; *24; 26*.

2. Sheriff Garber and LPSD Officers under § 1983: (1) unlawful detention; (2) violations of conditions of confinement - depriving him of a top bunk, mattress, bathroom and protection from other detainees/inmates. *R. 24; 26*.

3. LCG and LCG Officers and Sheriff Garber and LPSD Officers under State Law: (1) assault and battery; (2) false arrest; (3) excessive force; (4) libel, slander, defamation; (5) intentional infliction of emotional distress. *R. 25*; *27*.

4. "In addition to the causes of action set forth above," *R. 25, 27*, LCG and Sheriff Garber under State Law: (1) failure to train; (2) failure to supervise; (3) negligent selection and hiring; (4) vicarious liability; (5) negligence, intentional

negligence and negligence per se; and, (6) assault by other inmates.

## II. Standard for Motion to Dismiss

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).  However, conclusory allegations and unwarranted deductions of fact are not accepted as true and courts are not bound to accept as true a legal conclusion couched as a factual allegation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, at 570 "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, at 555.  "While a complaint . . . does not need *detailed* factual allegations,

a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id., see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Iqbal*, at 678.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc*., 565 F.3d 228, 257 (5th Cir. 2009).

### III. Section 1983 Standard

Section 1983 creates a private right of action for redressing violations of federal law by those acting under color of state law. To make out any claim under Section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law and, (2) that this conduct

deprived the plaintiff of rights secured by the Constitution or federal statutes. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). Pre-trial detainees possess a clearly established constitutional right to be free from punishment. *See Bell v. Wolfish*, 441 U.S. 520, 534–37 (1979). The Supreme Court has held that a pretrial detainee's claims of unconstitutional conditions of confinement are analyzed under the Fourteenth Amendment's guarantee of due process of law as opposed to the Eighth Amendment's prohibition of cruel and unusual punishment, which applies only to sentenced inmates. *See id.* at 535 n. 16; *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996).

In the context of section 1983 claims by pretrial detainees, the Fifth Circuit has distinguished between cases challenging specific acts and omissions and those alleging constitutional deprivations by virtue of the general conditions of confinement. *See Hare*, 74 F.3d at 644. A conditions of confinement case is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement." *See id.* In condition cases, the harm is caused by the condition itself. "This is true, for example, where inadequate food, heating, or sanitary conditions themselves constitute miserable conditions." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir.1997). The Fifth Circuit has concluded that where a pretrial detainee challenges the general conditions of confinement, as opposed to particular acts or omissions, a constitutional violation exists only if the court finds that the conditions of

confinement are not reasonably related to a legitimate, non-punitive governmental objective. *See Hare*, 74 F.3d at 640.

In contrast to a conditions of confinement case, where a plaintiff's allegations are based on a particular act or omission of one or more officials, the action is characterized as an "episodic act or omission" case. *See Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir.1999). Where the plaintiff is suing an individual defendant, as opposed to a municipality, for a specific act or omission the plaintiff "'must establish that the official(s) acted with subjective deliberate indifference to prove a violation of [her] constitutional rights.' " *Id.* An official acts with subjective deliberate indifference when he "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Hare*, 74 F.3d at 650. Although the Fifth Circuit has carefully distinguished the conditions of confinement cases from those cases arising from a specific act or omission, it has also noted that "the reasonable-relationship test employed in conditions cases is 'functionally equivalent to' the deliberate indifference standard employed in episodic cases." *Scott*, 114 F.3d at 54.

Here, Plaintiff complains of the deprivation of a top bunk bed, the general conditions of his place of confinement (laundry room)—the deprivation of bathroom access and a mattress that resulted, as well as dangerous conditions of his confinement. Accordingly, this case should be treated as a conditions of confinement

case by a pre-trial detainee.

### IV. Legal Analysis

In their motions to dismiss, Defendants seek dismissal of the following claims, asserted by Plaintiff: "(1) All Claims of Unlawful Arrest and Excessive Force; (2) All Individual Capacity Claims (Qualified Immunity); (3) Official Capacity claims against unnamed [LPSD Officers and against unnamed LCG Officers]; (4) Vicarious Liability Claims against Sheriff [Garber and against LCG]; (5) All Claims for Negligent Employment Practices [federal and state] (6) All Claims for False Imprisonment and Failure to Release; (7) All Claims of Defamation, Libel, Slander; (8) All Claims for Punitive Damages; and (9) All State Law Claims under Discretionary Immunity." *R. 25-1, p. 1; 27-1.* The Court will consider Defendants' motions as follows.

### A. Excessive Force and False Arrest Claims Against LPSD Officers and Sheriff Garber

Initially, Defendants contend that the Amended Complaint contains no factual allegations against the LPSD Officers or Sheriff Garber as to excessive force or unlawful/false arrest. Plaintiff alleges that he was "wrongfully and forcefully tackled, held, arrested and charged with unauthorized use of a movable" by several police officers employed by the LCG. *R. 24, ¶ 15.* Plaintiff, however, does not allege that LPSD Officers were present at any time leading up to or during his arrest. Rather,

these alleged claims  are only against LCG. In his Memorandum in Opposition to Defendants' first motions, *R. 15*, Plaintiff concedes that he has no such claims against the LPSD Officers or Sheriff Garber, but submits that the remaining claims should stand. *Id., p. 5.* Thus, any claims for excessive force or claims related to Plaintiff's arrest asserted against the LPSD Officers or Sheriff Garber must be dismissed.

*B. Official Capacity Claims Against LPSD Officers And LCG Officers*

Plaintiff contends that the unknown LCG Officers are liable in their official capacities for alleged excessive force and false arrest. He further contends that the unknown LPSD Officers are liable in their official capacities for the alleged violations of his conditions of confinement while he was detained in LPCC.[3] Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent. *Monell*, 436 U.S. 659, 691 n. 55 1978). Sheriff Garber may be sued in his official capacity because under Louisiana law, the sheriff in his official capacity is the appropriate governmental entity on which to place responsibility for the torts of a deputy sheriff. *See* La.R.S. § 15:704 (providing that Sheriff is the "keeper" of the parish jail)*; Burge v. Parish of St. Tammany*, 187 F.3d 452, 469 (5th Cir. 1999); *Jackson v. Blackman*, 2017 WL 3083684, at *3 (W.D.La., 2017).

---

[3] Although Plaintiff does not specify whether he is suing the defendants in their individual or official capacities, the Court interprets his complaint to incorporate a cause of action for both.

11

Thus, as Plaintiff has named the LCG and Sheriff Garber as Defendants, Plaintiff's claims against the unnamed LPSD Officers and the unnamed LCG Officers in their official capacities should be dismissed.

*C. Vicarious Liability or Respondeat Superior Claims Under § 1983*

Section 1983 offers no *respondeat superior* liability. Municipalities are not liable for the constitutional torts of their employees unless those employees act pursuant to official approval. *See Monell*, 436 U.S. at 658 (reaffirming that "the doctrine of respondeat superior is not a basis for rendering municipalities liable under § 1983"). "Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) ("Culpability includes both the involvement of a municipal policymaker and affirmative municipal action.").

*D. Sheriff Garber and LCG's Failure to Train and Supervise Under § 1983*

Although the pleadings are not entirely clear, the Court reads the Complaint to state claims under § 1983 for failure to train and supervise against Sheriff Garber in his individual and official capacities, and against LCG.

As previously stated, because a municipality is not liable under § 1983 on the theory of respondeat superior, it is liable only for acts directly attributable to it

through some official action or imprimatur. To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken "pursuant to an official municipal policy." To do so, a plaintiff must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010).

An official policy includes:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

> 2. A persistent, widespread practice of city officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

*Id.*

In this case, Plaintiff fails to even mention an official policy, custom, or persistent practice of either Sheriff Garber or LCG, much less make any allegation, conclusory or otherwise, that Sheriff Garber or anyone with LCG was a policy-maker who violated an official policy, custom or practice of the LPSD or LCG.

As to the individual claims, in a Section 1983 action, a supervisory official may be held liable only if: (a) he affirmatively participated in the acts that resulted in a

13

constitutional deprivation; or (b) he implemented unconstitutional policies that resulted in the plaintiff's injury. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). To establish supervisor liability for constitutional violations committed by subordinate employees, the plaintiff must show that the supervisor acted, or failed to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates. *Id.* Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 446-47.

"For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Deliberate indifference requires a showing of more than negligence or even gross negligence. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity. To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381-83 (5th Cir. 2005).

In this case, there is no allegation that Sheriff Garber or any LCG supervisor was present or affirmatively participated in any way in the complained of incidents.

Nor does Plaintiff allege that either Sheriff Garber or any LCG supervisor acted or failed to act with deliberate indifference to the constitutional violations allegedly committed by their unnamed officers.

A complete failure of proof concerning an essential element of the nonmoving party's case is fatal and entitles the moving party to judgment as a matter of law." *Ledesma v. Swartz*, 1998 WL 355480, at *2 (N.D. Tex. June 26, 1998) (citing *Celotex v. Catrett*, 477 U.S. at 322-23). Consequently, there is no basis for the failure to train or supervise claims against Sheriff Garber or LCG in their official capacities or in any individual capacity.

### E. Individual Capacity Claims Against LPSD Officers and LCG Officers

Plaintiff's Amended Complaint first alleges that unnamed LCG Officers violated his Fourth Amendment right to be free from unconstitutional seizure and excess force. Plaintiff also alleges the unnamed LPSD Officers violated his Fourteenth Amendment rights related to conditions of confinement while he was detained at the LPCC. Defendants assert they are entitled to qualified immunity as to all of Plaintiff's claims against the unnamed LCG and LPSD Officers in their individual capacities.

In *Saucier v. Katz*, the Supreme Court set forth a two-part framework for analyzing whether a defendant was entitled to qualified immunity. 533 U.S. 194

(2001). Part one asks the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id*. at 201. Part two inquires into whether the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. The Court does not have to address these two questions sequentially; it can proceed with either inquiry first. *See Pearson*, 555 U.S. at 236; *see also Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014).

In the context of a motion to dismiss, "a district court must first find that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. Leblanc*, 691 F.3d 645, 648 (5th Cir. 2012). "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe* at 645. After the district court determines that plaintiff's pleadings meet this requirement, "if the court remains 'unable to rule on the immunity defense without further clarification of the fact' it may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Id*.

Plaintiff's Amended Complaint first alleges that the unnamed LCG Officers,

16

individually, violated his Fourth Amendment right to be free from unconstitutional seizure and excess force. Plaintiff also asserts claims against the unnamed LPSD Officers, individually, related to conditions of confinement wherein he alleges unreasonable detention and deprivation of basic human rights, including ignoring his requests not to sleep on a top bunk due to his medical condition; housing him in a laundry room with (1) no access to a bathroom, resulting in him having to defecate and urinate on the laundry room floor, and (2) without a bed, requiring him to sleep on the floor; allowing him or putting him in an area where he would be assaulted by fellow inmates; and failing to take post-arrest corrective steps to release him. As a pretrial detainee, Plaintiff's constitutional rights flow from the Fourteenth Amendment Due Process Clause.

Based on Plaintiff's allegations in the Amended Complaint, the Court finds that Plaintiff's pleadings assert specific facts which, if true, would allow the Court to reasonably draw an inference that the defendants are liable for the harm Plaintiff has alleged and that defeat a qualified immunity defense. Plaintiff seeks to impose liability against the LCG and LPSD Officer(s), individually. His Amended Complaint, however, fails to identify any LCG or LPSD Officer(s) who allegedly violated his constitutional rights. Nor does Plaintiff identify any inmate(s) who allegedly threatened or assaulted him while he was detained at the LPCC. While Plaintiff

amended his Complaint with respect to the alleged Fourth Amendment violations by the LCG Officers, Plaintiff's allegations related to his Fourteenth Amendments claims against the LPSD Officers were not supplemented in his Amended Complaint. For Plaintiff to defeat Defendants' qualified immunity defense he must allege facts, which taken as true, demonstrate that the LPSD Officer(s) committed a constitutional violation, and that their actions were objectively unreasonable under the law at the time of the relevant conduct. *Atteberry*, 430 F.3d at 253. Unlike the notice pleading standard in Rule 8, the heightened pleading standard applicable in cases defended on qualified immunity grounds requires a plaintiff to plead "with factual detail and particularity, not mere conclusory allegations." *Id.; see also Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995).

In his Amended Complaint, Plaintiff points out that "facts concerning the Defendants' involvement are largely unknown [and] are within the possession of the Defendants." The Fifth Circuit recently addressed this situation in *Morgan v. Hubert*, 2009 WL 1884605 (5th Cir. July 1, 2009):

> We are mindful that the protection afforded by qualified immunity applies to the lawsuit itself, and not merely to liability, and thus the issue should be resolved as early as possible. Thus, we are reluctant to allow the case to proceed to full discovery with important questions regarding qualified immunity left unanswered. *Schultea* points the way forward. We noted there the district court's ability to tailor discovery to the defense of qualified immunity: 'The district court may ... limit any necessary discovery to the defense of qualified immunity.' 47 F.3d at

18

1434. Such a course is called for here.

*Id.*, 2009 WL 1884605 at * 6. In *Morgan*, the Fifth Circuit remanded the case to the district court for discovery on the issue of qualified immunity "[b]ecause key facts are unknown, and because these facts are solely within [Defendants'] possession." *Id.*

Similarly, in this case the Court finds that it must defer its qualified immunity ruling in order for further factual development which is necessary to ascertain the availability of that defense. Plaintiff is entitled to limited discovery against the LCG and LPSD Defendants as to the issue of qualified immunity, as set out by the Court in the foregoing. The Court will therefore order the parties to conduct limited discovery "narrowly tailored to uncover only those facts needed to rule on the immunity claim." *See Backe, 691 F.3d at 648.*

*F. Punitive Damages*

Defendants contend that Plaintiff's demand for punitive damages against all Defendants should be dismissed because punitive damages are not recoverable against a municipality or its officers under Section 1983. Plaintiff's Amended Complaint asserts he is entitled to punitive damages "[a]s a proximate result of the acts and omissions of all of the defendants, and its employee officer's." *R. 24.*

The Supreme Court has held unequivocally that "[a] municipality is immune from liability for punitive damages under 42 U.S.C. § 1983." *Tickner v. City of*

19

*Shreveport*, 2017 WL 629227, at *4 (W.D. La., 2017) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270-71 (1981)). The Supreme Court has also held that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Webb v. Town of St. Joseph*, 2017 WL 916407, at *3 (W.D. La., 2017) (citing *Kentucky v. Graham*, 473 U.S. 159, 161 (1985)). This Court finds that Plaintiff is barred from recovering punitive damages against Sheriff Garber in his official capacity and a municipality such as the LCG.

The Supreme Court has recognized, however, that punitive damages are recoverable against municipal employees when sued in their individual capacities pursuant to a § 1983 claim. *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003). As the Court has previously held that Plaintiff makes no allegations that Sheriff Garber or any LCG supervisor affirmatively participated in any of the alleged incident, Plaintiff's punitive damages claim against Sheriff Garber and LCG should be dismissed. To the extent Plaintiff has asserted punitive damages against the unnamed LPSD Officers and LCG Officers, in their individual capacities, Plaintiff's claims for punitive damages should remain.

Plaintiff also alleges he is entitled to punitive damages under Louisiana State Law. It is axiomatic that punitive damages are not allowable under Louisiana law

20

unless expressly provided for by statute. As Plaintiff's Complaint does not provide any statute which expressly authorizes such awards, Plaintiff's claim for punitive damages under state law should be dismissed.

*G. State Law Claim for False Arrest/False Imprisonment and Assault and Battery*

Plaintiff asserts a state-law claim against LCG Officers for false arrest and LPSD Officers for false imprisonment. Under Louisiana law, "[f]alse arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority." *Deville*, 567 F.3d at 172 (quoting *Kyle v. City of New Orleans*, 353 So.2d 969, 971 (La. 1977)). As under federal law, an officer who does not have a warrant for the arrest must have probable cause under Louisiana law. *Id.*

False arrest claims under Louisiana law are analyzed with the same standard used to assess false arrest claims under § 1983. *See, e.g., Moresi v. State Through Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1094 (La. 1990). This analysis also applies to claims for assault and battery under Louisiana law when an officer uses excessive force, the officer and his employer are liable for any injuries which result. *Kyle v. City of New Orleans,* 353 So. 2d 969, 972 (La. 1977). Louisiana courts recognize the defense of qualified immunity to a plaintiff's claims that an actor's conduct under color of state law deprived him or her of a right secured by Article I,

Section 5 of the Louisiana Constitution, the state counterpart to the Fourth Amendment to the United States Constitution. *Id.* That is, like in the qualified immunity context, the actions of the defendants must be judged for objective reasonableness when considered under state law. "If the defendant shows that the state constitutional right alleged to have been violated was not clearly established, the defendant is entitled to qualified immunity." *Id.*

In light of the Court's determination that limited discovery related to LCG and LPSD Officers claims of qualified immunity must be conducted as to Plaintiff's arrest and imprisonment under § 1983, so must this limited discovery be conducted as to the related state law claims.[4]

*H. State Law Claim for Defamation, Libel and Slander*

Plaintiff contends his reputation was damaged by the publication of a photograph from his wrongful arrest displayed on "Jades website" with his company name displayed on his shirt. He asserts claims for libel, slander and defamation against LCG Officers and LPSD Officers. *R. 25.*

In Louisiana, a claim for defamation requires the following elements: (1) defamatory words; (2) publication; (3) falsity; (4) malice; and (5) resulting injury. *Gugliuzza v. K.C.M.C., Inc.*, 606 So.2d 790, 791 (La.1992). A defamatory

---

[4] Defendants did not address Plaintiff's claims for State Law negligence and intentional infliction of emotional distress. Such claims are related to Plaintiff's Section 1983 claims.

communication is one that tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Id.* at 791. "[T]o be actionable, the defamatory words must be 'of and concerning' the plaintiff or, directly or indirectly, cast a personal reflection on the plaintiff." *In re New York Life Ins. Co. Agents' Class Claimants Solicitation Litigation*, 92 F.Supp.2d 564, 569 (E.D.La.1997).

"In Louisiana, privilege is a defense to a defamation action. The doctrine of privilege rests upon the notion that sometimes, as a matter of public policy, in order to encourage the free communication of views in certain defined instances, one is justified in communicating defamatory information to others without incurring liability." *Kennedy v. Sheriff of East Baton Rouge*, 935 So.2d 669, 681 (La.,2006). In *Kennedy*, the Louisiana Supreme Court reiterated the longstanding practice of the courts of this state of recognizing that the public has an interest in bringing possible criminal activity to the attention of the proper authorities, and, on that basis, extending a qualified privilege to such reports made in good faith. *Id*. at 683 ("It would be self-defeating for society to impose civil liability on a citizen for inaccurately reporting criminal conduct with no intent to mislead. If the risks to the citizen are too high, a fertile field for criminal suppression will have disappeared.").

The *Kennedy* court outlined the two-step process for determining whether a

23

conditional privilege exists. First, it must be determined whether the attending circumstances of a communication occasion a qualified privilege—generally a matter of law.  If so, the plaintiff must show in the second step that the privilege has been abused. To establish an abuse of the privilege, a plaintiff must demonstrate that the person communicating alleged wrongful acts to an official, one authorized to protect the public from such acts, either knows the matter to be false, which constitutes malice, or acts with a reckless disregard for the truth.

Here, the Amended Complaint provides no factual allegation regarding the party authorized for the maintenance of the Jades website or the party factually responsible for the publication. More significantly, there is no allegation that the privileged information at issue was placed on the website with malice or reckless disregard for the truth. The Court finds Plaintiff's defamation claim should be dismissed.

*I. Other State Law Claims for Negligent Hiring*

Defendants, Sheriff Garber and LCG, contend that the remaining alleged state law employment claims, negligent hiring, training, and retention, are discretionary acts subject to immunity under La. R.S. 9:2798.1. *R. 25.*  LA. R.S. § 9:2798.1 provides, in pertinent part:

> B. Liability shall not be imposed on public entities or their officers or
> employees based upon the exercise or performance or the failure to

exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

...

C. The provisions of Subsection B of this Section are not applicable:

...

(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

...

In *Gregor v. Argenot Great Cent. Ins. Co*., 851 So.2d 959, 966 (La.2003), the Louisiana Supreme Court held that the object of La.R.S. 9:2798.1 "is to provide immunity from liability for offenses and quasi offenses of public entities, as defined therein, when the acts or omissions of the public entities are policymaking or discretionary acts or omissions." Citing *Gregor*, the Louisiana Appellate court in *Smith v. Lafayette Parish Sheriff's Dept*, 874 So. 2d 863 (La.App. 3 Cir. 2004), held that Sheriff Breaux, the LPSD Sheriff at that time, "established a hiring/retention policy when he took office which was within the course and scope of his lawful powers and duties." *Id.* at 868. Because no statutes, regulations, or other legal requirements directed the hiring of law enforcement employees, "Sheriff Breaux's hiring/retention policy was a discretionary act, and liability cannot be imposed on LPSD for its application of the policy." *Id.*

In this case, Plaintiff has not alleged any Louisiana statute mandating a particular policy or procedure for hiring, training, supervising or screening officers.

25

Nor has the Court located any such relevant statute mandating a policy or procedure. Accordingly, Sheriff Garber's decisions to hire, train, supervise and retain officers are discretionary functions, for which Louisiana Revised Statutes § 9:2798.1 grants the officers and the department immunity. *See also, Curran v. Alshire*, 67 F.Supp 3d 741 (E.D.La. 2014) (It is clear that Sheriff Strain's decisions to hire, train, supervise and retain officers are part of his discretionary power within the course and scope of his lawful powers and duties as sheriff."); *Hoffpauir v. Columbia Casualty Company*, 2013 WL 5934699 (M.D. La. Nov. 15, 2013) (As in *Smith*, "the hiring, training, and supervision policy of the Livingston Parish Sheriff's Department is a discretionary function."); *Fontenot v. Toups*, 2011 WL 2214760 (E.D. La. June 6, 2011). (No statute or regulation has been presented which otherwise proscribes the application of these powers in this context.).

As to LCG's liability for negligent hiring, training, and retention, Plaintiff has not identified any alleged policymaker. More significantly, he has failed to establish that any LCG official has final policymaking authority in that area. Plaintiff's allegations which fail to meet even "threadbare recitals of the elements of a clause of action" against LCG do not suffice to survive Defendants' motion to dismiss. *Iqbal*, 556 U.S. at 678.

*Conclusion*

For the above-assigned reasons,

**IT IS RECOMMENDED** that the unopposed Motion To Dismiss filed by Lafayette Parish Sheriff's Department, through its Sheriff, Mark A. Garber, Defendants, and LPSD officers yet to be named [Rec. Doc. 25] be **GRANTED IN PART** as to: (1) all Section 1983 and Louisiana State Law claims against Sheriff Mark A. Garber, individually and in his official capacity; (2) Lafayette Parish Sheriff's Department unnamed Officers in their official capacities; and (3) Lafayette Parish Sheriff's Department unnamed Officers in their individual capacities as to the Section 1983 and related Louisiana State Law false arrest and excessive force claims, and **DENIED IN PART** as to the remaining Section 1983 claims and related Louisiana State Law claims against Lafayette Parish Sheriff's Department unnamed Officers in their individual capacities.

**IT IS FURTHER RECOMMENDED** that the unopposed Motion To Dismissed filed by Lafayette City-Parish Consolidated Government Defendants [Rec. Doc. 27], be **GRANTED IN PART** as to: (1) all Section 1983 claims and Louisiana State Law claims against Lafayette City-Parish Consolidated Government; and (2) Lafayette City-Parish Consolidated Government unnamed Officers in their official capacities and **DENIED IN PART** as to all Section 1983 claims and related

27

Louisiana State Law claims alleged against Lafayette City-Parish Consolidated Government unnamed Officers in their individual capacities.

**IT IS FURTHER RECOMMENDED** that a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim, as provided under *Backe v. Leblanc*, 691 F.3d 645, 648 (5th Cir. 2012), be issued as to the remaining Section 1983 and Louisiana State Law claims against the LPSD and LCG Officers in their individual capacities.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415

(5th Cir.1996).

**THUS DONE AND SIGNED** at Lafayette, Louisiana, this 19th day of

October, 2017.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**